IN RE DISQUALIFICATION OF DINKELACKER.

STATE *v.* HUNTER.

[Cite as *In re Disqualification of Dinkelacker,*
144 Ohio St.3d 1244, 2015-Ohio-3339.]

(No. 15–AP–025—Decided April 17, 2015.)

O'CONNOR, C.J.

{¶ 1} Clyde Bennett II, counsel for defendant Judge Tracie Hunter, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Patrick Dinkelacker and all other judges of the Hamilton County Common Pleas Court from presiding over any further proceedings in the above-captioned cases.

{¶ 2} Defendant Judge Hunter holds a judicial seat in the juvenile division of the Hamilton County Common Pleas Court, although she is currently suspended from office without pay pursuant to Gov.Jud.R. III(6)(B). *See In re Hunter,* 141 Ohio St.3d 1212, 2014-Ohio-4667, 21 N.E.3d 1070. In 2014, Judge Hunter was indicted on nine felony charges. A jury convicted her of one of those charges, and a mistrial was declared on the other eight charges after the jury could not reach a verdict. The state has elected to retry Judge Hunter on the remaining counts as well as on an additional felony charge, and the matter is now pending for retrial. The judge who presided over the first trial has retired, and in November 2014, Judge Patrick Dinkelacker, who had previously served on the First District Court of Appeals, was elected to the seat, thereby assuming the underlying case.

{¶ 3} In his affidavit of disqualification, Bennett sets forth three reasons why he believes that an appearance of impropriety exists if Judge Dinkelacker or any other county common pleas court judge presides over the retrial. Judge Dinkelacker has responded in writing to the affidavit, stating that there is no appearance of impropriety if he presides over the case.

{¶ 4} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. Nonetheless, "[t]he statutory right to seek disqualification of a judge is an extraordinary remedy. * * * A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. For the reasons explained below, Bennett has not set forth sufficiently compelling evidence demonstrating that a reasonable and objective observer would harbor serious doubts about Judge Dinkelacker's impartiality, and therefore no basis has been established to order the disqualification of Judge Dinkelacker.

### Judge Dinkelacker's participation in First District Court of Appeals cases involving Judge Hunter

{¶ 5} Bennett first argues that during the previous trial, one of the state's theories of prosecution was that Judge Hunter refused to follow the law, and to prove that point, prosecutors referred to and introduced into evidence various First District cases involving Judge Hunter, such as appellate court opinions reversing her legal decisions and an opinion holding her in contempt. Bennett states that because Judge Dinkelacker was a member of the First District when many of these cases were decided, and because he participated in some of the cases, an appearance of impropriety exists if he presides over the retrial. In response, Judge Dinkelacker acknowledges that as a court of appeals judge, he reviewed a number of Judge Hunter's legal decisions, some of which were not favorable to her, including the contempt finding. Judge Dinkelacker states, however, that his decisions were not a product of bias or prejudice against Judge Hunter and that none of those prior cases were related to the underlying criminal case.

{¶ 6} R.C. 2701.03(B)(1) requires an affiant to set forth the "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based." Here, Bennett does not specifically explain why references to, and the introduction of, various First District opinions at the retrial would cause a reasonable person to have serious doubts about Judge Dinkelacker's impartiality. Bennett *may* be implying that Judge Dinkelacker has personal knowledge of potential evidence and therefore could be unfairly influenced by these prior cases. Indeed, Jud.Cond.R. 2.11(A)(1) requires disqualification of any judge who possesses personal knowledge of facts in dispute. But Bennett has not made this specific argument. And even if he had, First District opinions reversing Judge Hunter in

*unrelated* cases cannot be considered disputed evidentiary facts regarding the underlying criminal charges. Moreover, knowledge gained by a judge in a prior judicial proceeding—i.e., in the judge's official judicial capacity—is generally not a sufficient ground to remove a judge in a subsequent case. *See In re Disqualification of Basinger,* 135 Ohio St.3d 1293, 2013-Ohio-1613, 987 N.E.2d 687, ¶ 5 ("because ' "evidence presented in the trial of a prior cause * * * does not stem from an extrajudicial source," it creates no personal bias requiring recusal' " [brackets sic]), quoting *State v. D'Ambrosio,* 67 Ohio St.3d 185, 188, 616 N.E.2d 909 (1993), quoting *State v. Smith,* 242 N.W.2d 320, 324 (Iowa 1976).

{¶ 7} The circumstances here are similar to a case in which a judge presided over a prior proceeding involving the same defendant or formerly prosecuted the defendant on unrelated grounds. The judge may have some familiarity with the defendant and that former conviction may be relevant to the pending case. However, those facts do not necessarily support an inference that the judge will harbor personal bias against the defendant such that the reasonable person would question whether the judge could be fair in the current proceeding. *See, e.g., Basinger; In re Disqualification of Hedric,* 127 Ohio St.3d 1227, 2009-Ohio-7208, 937 N.E.2d 1016. "Just as '[a] judge is presumed to follow the law and not to be biased,' *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5, a judge is presumed to be capable of separating what may properly be considered from what may not be considered." *Basinger* at ¶ 5. Bennett has not specifically explained how the state's potential introduction of First District opinions creates an appearance of bias, and nothing in this record suggests that Judge Dinkelacker obtained personal knowledge regarding the underlying facts from those prior cases or that he has been unduly influenced by them. Without more, the state's reference to unrelated First District cases does not give rise to a claim of judicial bias.

### The judges' alleged close ties to witnesses

{¶ 8} Bennett next claims that Judge Dinkelacker and all the common pleas court judges have "close ties and professional relationships" with many of the potential witnesses at retrial, which may include other judges, a county commissioner, the county prosecuting attorney, several assistant prosecutors, the chief public defender, and juvenile court magistrates. For his part, Judge Dinkelacker states that it is not unusual for people he knows to testify as witnesses and that as a judge in a jury trial, he will not be judging witness credibility.

{¶ 9} "Disqualification of an entire county bench is appropriate in some cases in which all of the judges might reasonably be thought to enjoy a close relationship or hold particularly strong emotional ties to a witness." *In re Disqualification of Koch,* 113 Ohio St.3d 1220, 2006-Ohio-7228, 863 N.E.2d 624, ¶ 5. However, absent compelling evidence in an affidavit of disqualification, there is no need to

disqualify an entire bench merely because a public official may be a witness. *See id.; In re Disqualification of Lucci*, 117 Ohio St.3d 1242, 2006-Ohio-7230, 884 N.E.2d 1093. Here, Bennett states only that Judge Dinkelacker and all other judges have "close ties and professional relationships" with many of the witnesses, but he does not further explain how Judge Dinkelacker's professional relationship with these potential witnesses is so close that it creates an appearance of partiality. Without more evidence of a disqualifying relationship, the fact that certain witnesses at the trial may be public officials or public employees does not mean that the reasonable observer would necessarily question the ability of Judge Dinkelacker to rule impartially.

{¶ 10} More concerning is the possibility that other judges may testify. In a previous matter, the chief justice determined that disqualification was not necessary in a case in which a probate court judge was scheduled to testify as a fact witness in a civil case pending in the general division of the common pleas court, as the judges presided over different divisions of the court and there was no evidence of a particularly close relationship between the judges. *See In re Disqualification of Forchione*, 134 Ohio St.3d 1211, 2011-Ohio-7077, 981 N.E.2d 875, ¶ 6. Thus, the possibility that a juvenile court judge and a municipal court judge may testify in the underlying criminal matter does not require Judge Dinkelacker's disqualification, because the judges serve in different divisions or courts and, again, Bennett has failed to allege any connection between these individuals, other than that they are all judges in Hamilton County.

{¶ 11} Bennett also claims that he anticipates calling Judge Beth Myers, a colleague of Judge Dinkelacker on the general division of the common pleas court. In *In re Disqualification of O'Neill*, 81 Ohio St.3d 1213, 688 N.E.2d 516 (1997), the chief justice disqualified an entire bench of judges because another judge on the same court would be called as a witness at a suppression hearing regarding the judge's involvement as an assistant prosecutor in obtaining statements from a defendant prior to his arrest. Because the trial judge presiding over the suppression hearing would necessarily be required to assess the credibility of a colleague—and possibly determine that colleague's involvement in the investigation that produced the statements that the defendant sought to suppress—the chief justice ordered disqualification of the entire bench to avoid any appearance of impropriety. *Id.* at 1214.

{¶ 12} Here, Bennett makes no similar argument regarding whether Judge Dinkelacker will be required to assess the credibility or competency of Judge Myers. In fact, Bennett has not identified the subject matter of Judge Myers's potential testimony, and he states that Judge Myers did not actually testify at the first trial because the parties agreed to proffer her testimony. Without more, the reasoning of *O'Neill* does not apply here, and therefore Bennett has failed to

prove why disqualification of the entire Hamilton County bench is necessary merely because the parties may proffer Judge Myers's testimony on an unknown subject at retrial.

### Another judge is a party

{¶ 13} In his final argument, Bennett cites three disqualification cases for the rule that "a sitting judge should not preside in a case involving another judge of the same court." In all three cases, the chief justice disqualified an entire bench of county judges because a sitting judge was a party to the underlying case. *See In re Disqualification of McMonagle,* 74 Ohio St.3d 1226, 657 N.E.2d 1338 (1990); *In re Disqualification of Calabrese,* 74 Ohio St.3d 1233, 657 N.E.2d 1342 (1991); and *In re Disqualification of Callahan,* 81 Ohio St.3d 1219, 688 N.E.2d 520 (1997). Although none of those decisions explain the nature of the appearance of impropriety in detail, it can be presumed that the reasonable person would conclude that judges from the same county have close relationships with each other and therefore the trial judge may be prejudiced in favor of his or her colleague, a party to the underlying case.

{¶ 14} Regardless, these cases should not be interpreted as adopting a per se rule that a judge must be disqualified from any case in which another judge in the same county is a criminal defendant. Instead, the ability of a judge to preside fairly and impartially in such situations should be determined on a case-by-case basis. *See, e.g., In re Disqualification of Celebrezze,* 74 Ohio St.3d 1231, 657 N.E.2d 1341 (1991) (denying a request filed by a common pleas general-division judge to disqualify all domestic-relations-division judges from a domestic case in which the general-division judge was named as a party).

{¶ 15} Here, Judge Dinkelacker and Judge Hunter hold judicial seats in different divisions of a large county common pleas court. They do not assign cases to each other, their divisions are administered separately, and their courthouses have different addresses. Further, when Judge Hunter was authorized to serve as a juvenile court judge, Judge Dinkelacker served on the appellate court. By the time he moved to the common pleas court, Judge Hunter had already been suspended from office. Judge Dinkelacker avers that he does not personally know Judge Hunter, and if he remains on the case, he affirms that he will treat it like any other case on his docket. Bennett has not alleged—let alone proven—that Judge Dinkelacker has a personal bias against Judge Hunter. Under these facts, the disinterested observer would have no reason to question Judge Dinkelacker's impartiality on the ground that Hunter, a suspended juvenile court judge, is a party to the underlying case.

## Conclusion

{¶ 16} For the reasons explained above, the affidavit of disqualification is denied. The case may proceed before Judge Dinkelacker.